COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Annunziata and Agee
Argued at Alexandria, Virginia


LUCY SHARON MAE ANTHONY
                                            OPINION BY
v.    Record No. 2938-00-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                           JULY 3, 2001
FAIRFAX COUNTY DEPARTMENT OF
 FAMILY SERVICES AND FAIRFAX COUNTY
 BOARD OF SUPERVISORS


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Andrew S. Kasmer (Chasen & Boscolo, on
            brief), for appellant.

            James E. Wilcox, Jr., Assistant County
            Attorney (David P. Bobzien, County Attorney;
            Robert Lyndon Howell, Deputy County Attorney,
            on brief), for appellees.


     Lucy Sharon Mae Anthony ("claimant") appeals the Workers'

Compensation Commission's ("commission") decision denying her

benefits for post-traumatic stress disorder ("PTSD"), allegedly

caused by two distinct confrontations with different clients.

The commission held that claimant failed to prove the

confrontations gave rise to a compensable psychological injury

by accident.  The commission found that the confrontations were

neither unexpected in claimant's line of work nor so dramatic or

frightening as to shock the conscience.  We agree with the

commission's ruling and affirm the decision.

I.

Claimant was a social worker for Fairfax County Department of Family Services ("employer"). Her job duties included field contacts with clients and the implementation of court orders. She testified that her clients were located in "areas [that were] . . . low class, like drug areas." She also described her clients as "[p]arents who have alcohol and drug problems. Parents with mental health problems, mentally retarded. Parents who, basically, have problems with the court in terms of abusing their children."

On July 15, 1998, claimant conducted a home visit to discuss a client's non-compliance with a court order. The client became angry, pulled claimant from the chair by her arm and threw her out of the house. Claimant injured her right shoulder and arm. She missed a few days of work and sought medical treatment with Dr. Dean Bennett. An award for benefits was entered on her behalf, and she was paid accordingly.

On May 28, 1999, claimant went to a day care center to take emergency custody of two children. As claimant approached the door to the day care center, the mother and grandmother of the children ran up behind her, pushed her out of their way and caused her to fall from the porch. Claimant testified she had soreness in her previously injured right shoulder and arm as a result. She did not miss any time from work and required no new medical treatment as a result of this confrontation.

-

On December 10, 1999, claimant filed a claim for benefits. She alleged she suffered additional injuries to her neck and right shoulder, as a result of the July 15, 1998 confrontation, and new injuries to her right arm, shoulder and neck as a result of the May 28, 1999 confrontation. Additionally, she alleged she suffered psychological injuries as a result of the confrontations.

At hearing, claimant testified she was "terrified" when the mother and grandmother of the children pushed her aside in May 1999 and that she became "more afraid to go out in the field" after the May 1999 incident. The incident affected her relationships with other staff members. She rarely attended staff meetings and believed her co-workers were talking about her. She felt her temperament changed and she was more angry. She lost weight and had trouble sleeping. As a result of these problems, she sought help through the Employee Assistance Program and was referred to psychologist, Dr. John Zager, PhD, for counseling. He diagnosed PTSD with delayed onset as a result of the two assaults.

On January 10, 2000, at the request of employer, Dr. Brian Schulman, a psychiatrist, conducted a psychiatric evaluation of claimant. In his report, Dr. Schulman concluded that claimant

suffered from major depression, with the onset possibly precipitated by the incident of July 1998.[1]  He opined

> [there was] no evidence of Posttraumatic
> Stress Disorder (PTSD).  Ms. Anthony was an
> experienced social worker, who was
> accustomed to making home visits to troubled
> households.  Although she was surprised by
> being grabbed by her client in July, 1998
> this was not a life threatening or dangerous
> event (simply being abruptly pushed out of
> client's home).  Although frightening and
> unpleasant, it did not reach the threshold
> of a traumatic stressor associated with
> PTSD.  Further, she did not develop signs of
> psychic numbing, hypervigilance, heightened
> startle response, and/or chronic
> revivifications.

The deputy commissioner found that while claimant did not suffer any new physical injuries in the May 28, 1999 incident, it caused her PTSD.  Employer appealed and on review, the full commission reversed, stating:

> [W]e cannot conclude that, under these
> circumstances, the claimant suffered an
> "obvious sudden shock or fright," . . . .
> Although the claimant here feared that the
> women who ran past her and grabbed the
> children may have been armed, and that her
> life was in danger, we find this situation
> more closely resembles the facts in Owens
> [v. Va. Dept. of Transportation, 30 Va. App.
> 85, 515 S.E.2d 348 (1999),] where the
> claimant's perception of his danger exceeded
> his actual peril.  Furthermore, the claimant

---

[1] Employer failed to provide Dr. Schulman's report to claimant or disclose his appearance as a witness until the day before the hearing.  Claimant objected to the report and testimony, but the deputy commissioner allowed the evidence. Claimant did not appeal this issue to the full commission.  She argues this issue was preserved by counsel's objection at hearing.  After review of the record, we find the claimant failed to preserve this issue and it is barred by Rule 5A:18.

-

acknowledged that "quite often people are very upset when you come to remove their children," and that it was not unusual for her to encounter anger and profanity in the course of her employment. We certainly recognize the anxiety experienced by the claimant, and that she may have briefly feared for her personal safety, but we conclude that the facts of this case do not support the compensability of the claim. Although we agree that the claimant could not have reasonably expected to be assaulted in the course of her employment by the two women, we cannot conclude that the precipitating event was shocking or catastrophic, or so dramatic or frightening as to shock the conscience.

Claimant appeals the commission's decision.

## II.

Claimant contends the commission lacked credible evidence to support its finding that her PTSD was not related to the second assault.

On appeal, factual findings of the commission will not be disturbed if based on credible evidence. Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986). Whether credible evidence exists to support a factual finding is a question of law which is properly reviewable on appeal. See Ablola v. Holland Rd. Auto Ctr., Ltd., 11 Va. App. 181, 183, 397 S.E.2d 541, 542 (1990). Causation is a factual determination to be made by the commission, but the standards required to prove causation and whether the evidence is sufficient to meet those standards are legal issues which we must determine. Morris v. Morris, 238 Va.

-

578, 385 S.E.2d 858 (1989). In determining whether credible evidence exists to support the necessary factual findings, we view the evidence in the light most favorable to the party prevailing below. Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986).

In the instant case, claimant suffered no physical injury as a result of the May 1999 confrontation. She did suffer physical injuries in the July 1998 confrontation, but her psychological injury did not stem from that incident.[2] "To qualify as a compensable injury by accident, a purely psychological injury must be causally related to a . . . sudden shock or fright arising in the course of employment." Owens, 30 Va. App. at 88, 515 S.E.2d at 349 (citing Chesterfield County Fire Dep't v. Dunn, 9 Va. App. 475, 477, 389 S.E.2d 180, 182 (1990); Burlington Mills Corp. v. Hagood, 177 Va. 204, 209-11, 13 S.E.2d 291, 293-94 (1941)).

Claimant testified she was "terrified" when the women pushed her off the porch. However, she also testified she regularly met with angry clients in "low-class areas" and was an experienced social worker. Beginning with Hagood, the types of precipitating events that give rise to purely psychological compensable injuries are consistently described as shocking,

---

[2] The deputy commissioner ruled claimant's PTSD was a result of the May 1999 confrontation and claimant did not suffer any physical injury as a result of the May 1999 confrontation. This decision was not appealed to the full commission.

-

frightening, traumatic, catastrophic and unexpected. See

Hagood, 177 Va. 204, 13 S.E.2d 291 (electric flash and noise

similar to a shotgun blast deemed sufficient); see also Daniel

Const. Co. v. Tolley, 24 Va. App. 70, 480 S.E.2d 145 (1997) (the

explosion of 100 pounds of dynamite without warning while the

employee was unloading concrete in a mine shaft nearby deemed

sufficient); Hercules, Inc. v. Gunther, 13 Va. App. 357, 412

S.E.2d 185 (1991) (an explosion that killed two people and threw

the employee in the air deemed sufficient); Dunn, 9 Va. App. at

477, 389 S.E.2d at 182 (the death of a severely burned patient

cared for by an EMT deemed insufficient).

Dr. Schulman, when testifying about his diagnosis of major

depression rather than PTSD, stated:

> [T]he condition of the original trauma
> didn't measure up to the criteria described
> in the latest diagnostic and statistical
> manual of mental disorders, in that the
> trauma must be trauma, it can not [sic] be
> just stress.  The world is filled with all
> types of daily stresses.  The traumatic
> event has to be life threatening, has to be
> of a catastrophic - - - potentially
> catastrophic nature; it has to cause intense
> amount of biologic reactivity.

In his response to employer's question regarding what types of

events meet the criteria, Dr. Schulman responded:

> [L]ife threatening events, being held
> hostage, being held at gunpoint, being
> subject to some unexpected catastrophe like
> a severe automobile accident, a plane crash.
> And the word unexpected is very important
> because in the normal range of our
> activities, we kind of expect certain things

-

to happen.  And I felt that one of the factors in Ms. Anthony's case that mitigated against PTSD as a diagnosis, is that what happened to her was not out of the range of experience of a social worker in Child Protective Services.  You go into that situation with the anticipation that these are problematic situations, potentially aggressive situations, and Ms. Anthony, indeed, had been with Child Protective Services for some nine years.  So that when an individual has an expectation of certain things occurring, it mitigates against the development of a PTSD reaction, which is, indeed, the reaction to something unexpected happening - - - something terrifying happening.  When one looks at the event in isolation, it is unfortunate and obviously stressful, but not, as I previously stated, traumatic - - - particularly for somebody who works in that context daily.

The commission determined that confrontations with angry parents, even limited physical confrontations, were not unusual occurrences in claimant's work environment or so frightening, catastrophic or shocking as to support a compensable PTSD injury.  Claimant admitted her work environment required contact with angry, confrontational parents.  Thus, credible evidence supports the commission's determination that the facts of the May, 1999 incident did not rise to the level of the type of sudden shock or fright from which a compensable injury may arise.

Finding no error in the commission's decision, we affirm.

<u>Affirmed</u>.

-