COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Humphreys, Beales and Alston
Argued at Richmond, Virginia


DUSTIN HESS

v.        Record No. 0603-17-2

VIRGINIA STATE POLICE

OPINION BY
JUDGE ROBERT J. HUMPHREYS
NOVEMBER 14, 2017


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Craig B. Davis (Michael J. Beste; Reinhardt, Harper, Davis, PLC, on brief), for appellant.
>
> Mary H. Hawkins, Assistant Attorney General (Mark R. Herring, Attorney General; Samuel T. Towell, Deputy Attorney General; Scott John Fitzgerald, Senior Assistant Attorney General on brief), for appellee.


Virginia State Trooper Dustin Hess ("Hess") appeals the decision of the Virginia Workers' Compensation Commission ("the Commission") denying Hess benefits for a psychological injury resulting in Post-Traumatic Stress Disorder ("PTSD") and major depressive disorder.

## I.  Background

On August 19, 2015, Hess responded to a fatal accident scene.  A vehicle had struck an embankment, overturning and ejecting the driver into the opposite lane.  Shortly thereafter, the driver was hit by an oncoming vehicle that dragged him for approximately eight tenths of a mile. As the first responding trooper, Hess attempted to identify the driver, but the violence of the wreck had mutilated the body beyond recognition.  Hess, a trooper for ten years who had worked previous fatalities, described this scene as unfamiliar to any in his experience.  He began to feel disturbed at the scene, with psychological effects worsening following the end of his shift.  On

September 2, 2015, Hess sought psychological help. He then brought a claim seeking temporary total disability benefits from this date.

A deputy commissioner initially reviewed Hess's claim. In addition to Hess's testimony, the deputy commissioner also heard testimony from two of Hess's fellow State Troopers. Sergeant Christopher Owen ("Owen"), one of Hess's supervisors, testified that troopers spend roughly thirty-seven percent of work time investigating motor vehicle crashes. Owen stated that it would not be unexpected for a trooper to work a fatality or come across a mutilated body. Sergeant Jeremy Smith ("Smith"), a supervisor who was called to assist at the scene of the accident, testified that he had worked over fifty crashes and that this was not among the worst he had seen. The deputy commissioner awarded Hess temporary disability benefits and reasonable and necessary medical benefits. The Virginia State Police timely sought review of the deputy commissioner's determination by the full Commission.

The full Commission, upon review of the record, concluded that Hess had not suffered a compensable injury arising out of and in the course of employment.[1] The full Commission reversed and held that the preponderance of the evidence showed the events surrounding the accident were "not shocking or unexpected to an experienced state trooper and crash scene investigator." The full Commission cited the testimony of Sergeants Owen and Smith, as well as Hess's duties, training, and position in its decision.

## II. Analysis

### A. Standard of Review

Code § 65.2-706 allows a decision of the Commission to be appealed to the Court of Appeals. See Code § 65.2-706. "On appeal, this Court views the evidence in the light most

---

[1] The Commission is not bound by the findings of a deputy commissioner. See Code § 65.2-705(A).

favorable to . . . the prevailing party below." Advance Auto & Indem. Ins. Co. v. Craft, 63 Va. App. 502, 508, 759 S.E.2d 17, 20 (2014) (citing R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990)). Additionally, "factual findings of the commission will not be disturbed if based on credible evidence." Anthony v. Fairfax Cty. Dep't of Family Servs., 36 Va. App. 98, 103, 548 S.E.2d 273, 275 (2001).

Hess, nevertheless, seeks a *de novo* review of the standard used by the Commission to prove causation of a "sudden shock or fright." While causation is a factual determination, "the standards required to prove causation and whether the evidence is sufficient to meet those standards are legal issues which [the Court of Appeals] must determine." Id. (citing Morris v. Morris, 238 Va. 578, 385 S.E.2d 858 (1989)).

As a preliminary matter, we note that the briefs of the parties indicate some confusion regarding the construction of the statutory phrase "arising out of and in the course of employment." Code § 65.2-101.

In seeking review by the full Commission, the Virginia State Police argued: "*Deputy Commissioner Slough erred in finding claimant proved he sustained an injury by accident arising out of and during the course of his employment*. In order for a claimant to successfully show that he suffered from Post Traumatic Stress Disorder (hereinafter "PTSD") which was an injury that *arose out of his employment* claimant must show that he suffered from a sudden shock or fright or that the PTSD was a result of a physical injury." (sic) (Emphasis added).

The opinion of the Commission rephrased that argument as follows: "On review, the defendant argues that the claimant failed to prove that his psychological injury arose out of the employment, i.e., that he suffered 'an event which caused a sudden shock or fright' rising to the level required by case law."

Hess's brief to this Court states:

> For the sake of completeness, it should be noted that the defining issue herein, as articulated by the State Police before both the deputy commissioner and the Commission, was not based on causation as this Court interpreted the almost identical issue in Prince. Instead, Appellees contend that Trooper Hess did not experience a "sudden shock or fright that would result in a compensable injury by accident *arising out of the employment* as contemplated by the Virginia Workers' Compensation Act ('the Act')."

In pertinent part, a compensable injury is defined as "*only* injury by accident arising out of *and* in the course of the employment . . . ." Code § 65.2-101 (emphasis added). These are two separate elements which are not synonymous. "Arising out of" was defined in Bradshaw v. Aronovitch, 170 Va. 329, 196 S.E. 684 (1938), which stated that "an injury 'arises out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.'" Bradshaw, 170 Va. at 335, 196 S.E. at 686 (citing In re McNicol, 102 N.E. 697 (Mass. 1913)). "[T]he words 'in the course of' refer to the time, place and circumstances under which the accident occurred." Conner v. Bragg, 203 Va. 204, 208, 123 S.E.2d 393, 396 (1962) (internal citations omitted).

The use of the conjunctive "and" expresses the intent of the General Assembly that in order to be compensable, an injury must satisfy both criteria.

In UPS v. Prince, 63 Va. App. 702, 762 S.E.2d 800 (2014), we held that "A claimant may recover workers' compensation benefits for a purely psychological injury, provided the injury is causally related to a sudden shock or fright arising out of *and* in the course of the claimant's employment." Id. at 708, 762 S.E.2d at 803 (emphasis added).

Our holding in Prince was based upon our Supreme Court's decision in Burlington Mills v. Hagood, 177 Va. 204, 206, 135 S.E.2d 291, 291-92 (1941), a case of first impression in the

- 4 -

Commonwealth awarding benefits for a psychological injury. However, our holding in Prince may be perceived as confusing because of its apparent conflation of the relationship of a sudden fright or shock to *both* of the statutory requirements for compensability.

Hagood was the origin of the psychological injury test and discussed whether and when a psychological injury can arise out of and in the course of employment. The claimant in Hagood started to fall when she was startled by an electric flash caused by a short-circuit and was caught by a fellow employee. Seeing that employee a few days later caused her to faint. The employer argued that it was not the short-circuit flash which caused the claimant's shock but the sight of the man who caught her. The employer argued that because Hagood could have seen him again outside of work the shock did not "*arise out of or occur in the course of employment . . . .*" Hagood, 177 Va. at 210, 13 S.E.2d at 293 (emphasis added).

Adopting the view of a majority of our sister states, our Supreme Court held "there is an accidental or personal injury within the workmen's compensation acts where an employee, *in the course of his employment*, receives a sudden shock or fright, involving no physical impact, which results in his disability." Hagood 177 Va. at 209-10, 13 S.E.2d at 293 (emphasis added). In short, Hagood defines when a psychological injury is compensable. In applying Hagood, we have held that in order to be compensable, "a purely psychological injury, such as PTSD, must be causally related to a physical injury or to an obvious sudden shock or fright *arising in the course of employment*." Jackson v. Ceres Marine Terminals, Inc., 64 Va. App. 459, 464, 769 S.E.2d 276, 279 (2015) (emphasis added). Thus, to clarify the current state of the law in this regard, to be compensable, a psychological injury as with a physical injury, must arise out of the employment while the triggering event of a sudden shock or fright causing the injury must occur in the course of employment.

Applying this standard, we have noted that "the types of precipitating events that give rise to purely psychological compensable injuries are consistently described as shocking, frightening, traumatic, catastrophic and unexpected." Anthony, 36 Va. App. at 103-04, 548 S.E.2d at 276. The claimant must prove their injury by a preponderance of the evidence. See Hercules, Inc. v. Stump, 2 Va. App. 77, 79, 341 S.E.2d 394, 395 (1986) (internal citation omitted). The standard for determining causation of a "sudden shock or fright" is thus already established; Hess must prove by the preponderance of the evidence that an obvious sudden shock or fright occurred in the course of his employment resulting in PTSD.

Alternatively, Hess argues that the key question in this case is whether his PTSD arose out of his employment. However, as already noted, that would not end the analysis as our Supreme Court's holding in Hagood requires that, in order to be compensable, the psychological injury arising out of employment must be the result of a sudden shock or fright that occurs or arises in the course of employment. For the reasons already stated, this case centers on whether the injury was causally related to a "sudden shock or fright."

### B.  Whether the Crash Scene Resulted in a "Sudden Shock or Fright"

Therefore, the sole issue before us is whether Hess suffered a sudden shock or fright arising in the course of his employment. Hess argues that the accident scene caused a compensable psychological injury by comparing it with two cases previously decided by this Court that resulted in a sudden shock or fright to the respective claimants. In support of this argument, Hess cites Prince, wherein a UPS employee was awarded benefits after stumbling upon a homicide scene while making a delivery, and Jackson, where a worker was fatally mangled in a forklift accident. Hess describes the accident scene that he responded to as more shocking and gruesome than either the homicide in Prince or the forklift accident in Jackson.

However, assuming arguendo Hess's assessment of the accident scene is correct, that fact is not dispositive of the issue.

The proper inquiry is whether Hess "encountered a situation that was an expected occurrence in the performance of his duties." Hercules, Inc. v. Gunther, 13 Va. App. 357, 363, 412 S.E.2d 185, 188 (1991) (discussing denial of benefits for a firefighter's PTSD in Chesterfield Cty. v. Dunn, 9 Va. App. 475, 389 S.E.2d 180 (1990)). If so, his PTSD is not a compensable injury by accident.

A key factor in the determination whether a sudden shock or fright occurred in Prince was whether the murder scene was an unexpected event for the driver. The Prince Court noted that the driver "did not have a training course through UPS on how to prepare for or react to witnessing scenes of violence while on the job and out of approximately 150 deliveries a day on average, [the] claimant had never before seen any customers at their home covered in blood." Prince, 63 Va. App. at 712, 762 S.E.2d at 805. Conversely, in Anthony, where a social worker was assaulted, this Court affirmed denial of benefits because credible evidence supported the Commission's determination that "confrontations with angry parents, even limited physical confrontations, *were not unusual occurrences in claimant's work environment* or so frightening, catastrophic or shocking as to support a compensable PTSD injury." Anthony, 36 Va. App. at 105, 548 S.E.2d at 277 (emphasis added).

Whether a shock or fright occurred and if so, whether it was sudden or unexpected are clearly factual issues. Testimony before the Commission showed that traffic fatalities are an unfortunately frequent and expected occurrence in a trooper's daily duties and that troopers are prepared to encounter these scenes in their training. The Commission was entitled to consider the evidence that Hess was assigned to investigate an accident and that such accidents often involve fatalities, and to also consider Hess's training and experience in doing so as well as that

of his fellow troopers and assign credibility and weight as it deemed proper. We cannot conclude as a matter of law that the Commission erred in finding that Hess's traumatic experience was not a sudden or unexpected shock or fright for a State Trooper who received fatal accident and crash scene reconstruction training and had a decade of professional experience doing so.

Hess acknowledges that he had this training, but claims that it was insufficient to prepare him for "outlier" incidents and suggests a "zone of unexpectedness" exists where events of an expected *type* are rendered unexpected by a high *degree* of severity. As support for this novel theory Hess cites unpublished decisions of the Commission where either subjective language is used or legal terms are described in degree (e.g., "unexpected *enough*," "*sufficiently unexpected*"). However, whether Hess's PTSD resulted from a sudden fright or shock and thus occurred in the course of employment was a factual determination ultimately made by the Commission, and given that there is evidence in the record that supports the factual determination the Commission made, it is not further reviewable on appeal.

C. Case Law Has Not Established a Subjective Standard of Review

Hess's second assignment of error claims that the Commission erred by not applying a subjective standard of the definition of "sudden shock or fright." Hess concedes there has been no explicit precedent applying a subjective standard for purely psychological injuries but invites us to adopt his theory that any assessment of "shock or fright" must be based on the subjective view of the claimant. We decline Hess's invitation to do so for two reasons.

Hess essentially argues that the standard for psychological injuries should be a subjective standard, because the "the Compensation Act is intended to be remedial and must be liberally construed in favor of the employee." Hagood, 177 Va. at 210, 13 S.E.2d at 293. Therefore, Hess argues that the Commission's total disregard of his testimony constitutes error.

- 8 -

First, the Commission did not disregard Hess's subjective opinion, but weighed it against the testimony of two of his fellow troopers and the evidence of his training and experience. In doing so the Commission concluded that, as the claimant, Hess failed to carry his burden of persuading the Commission that the accident scene was so shocking or frightening as to constitute a sudden and unexpected injury arising out of his employment.

Moreover, the issue of whether an injury, physical or psychological, occurred in the course of employment is a factual determination that is the statutory responsibility of the Commission to make. To adopt the subjective standard advanced by Hess would effectively transfer that factual determination from the Commission to the claimant in clear frustration of the statutory framework created by the General Assembly[2] and we therefore reject Hess's proposed subjective standard.

### III. Conclusion

Because the decision of the Commission was supported by credible evidence that the fatal accident scene encountered by Hess was not sudden or unexpected for a state trooper with his training and experience, and was thus not compensable, and further because the Commission did not err in declining to adopt as dispositive Hess's subjective determination that he suffered a sudden shock or fright in the course of employment resulting in PTSD, the judgment of the Commission is therefore affirmed.

Affirmed.

---

[2] See Code § 65.2-700 ("All questions arising under this title . . . shall be determined by the Commission, except as otherwise herein provided.").