UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Chafin and Malveaux
Argued at Salem, Virginia

LYNCHBURG GENERAL HOSPITAL AND
  SENTRY INSURANCE CO.
                                               MEMORANDUM OPINION[*] BY
v.      Record No. 1479-17-3             JUDGE TERESA M. CHAFIN
                                                APRIL 10, 2018
ZACHARY D. FOSTER

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Jesse F. Narron (K. Elizabeth Kendall; Penn, Stuart & Eskridge, on
> briefs), for appellants.
>
> B. Patrick Agnew (Agnew, Johnson & Rosenberger PLLC, on brief),
> for appellee.

Lynchburg General Hospital and Sentry Casualty Co. (collectively "Lynchburg General")

appeal the decision of the Virginia Workers' Compensation Commission ("the Commission")

granting Zachary Foster benefits for head and brain injuries resulting from a vasovagal syncopal

episode on July 1, 2016. On appeal, Lynchburg General contends that the Commission erred in

(1) finding sufficient evidence to support a finding that Foster sustained a compensable injury by

accident arising out of his employment, and in (2) relying on inferences to establish the alleged

cause of Foster's vasovagal syncopal episode in light of the lack of medical evidence establishing

causation. For the reasons that follow, we reverse the decision of the Commission.

<u>Background</u>

"On appeal, this Court views the evidence in the light most favorable to . . . the prevailing

party below." <u>Hess v. Va. State Police</u>, 68 Va. App. 190, 194, 806 S.E.2d 413, 415 (2017)

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(quoting Advance Auto & Indem. Ins. Co. v. Craft, 63 Va. App. 502, 508, 759 S.E.2d 17, 20 (2014)). "[F]actual findings of the [C]omission will not be disturbed if based on credible evidence." Id. (quoting Anthony v. Fairfax Cty. Dep't of Family Servs., 36 Va. App. 98, 103, 548 S.E.2d 273, 275 (2001)). The facts in this case are not in dispute.

On July 1, 2016, Foster, an emergency room paramedic, assisted a physician with a lumbar puncture procedure.[1] Foster stood in front of the patient to stabilize him during the procedure. As the physician started to insert the needle into the patient's spine, Foster testified that he felt "light-headed" and "dizzy." Foster lost consciousness and fell to the concrete floor, sustaining a skull fracture and hematoma. His injuries required emergency surgery that day. A July 8, 2016 medical record from a nurse practitioner noted that Foster "had a vasovagal reaction." Metabolic, blood, and glucose panels were performed after Foster's accident. Foster's panel results indicated that he had an abnormally high glucose level.

Based on Foster's training and experience as a paramedic, he testified that a vasovagal episode is "either [a] lowering of the heart rate or the blood pressure . . . usually in reaction to something that leads to a loss of consciousness or a syncopal episode." Foster testified that the vasovagal episode could result from dehydration, pain, or standing too long. He stated that even though he had not eaten prior to the accident, he was not suffering from any of these potential triggers of a vasovagal episode on the morning of the accident. However, Foster testified that he does suffer from a heart condition called Kawasaki disease and food allergies severe enough to necessitate carrying an EpiPen.

Foster further testified that he assisted with approximately six to twelve similar procedures prior to the day of the accident. He recalled that although he had never discussed it

---

[1] Foster described the lumbar puncture as a procedure where a "long skinny needle," is inserted into the spine "to get the fluid out of the back."

with anyone, he experienced "weird" reactions, or lightheadedness, when observing lumbar needles being used in the past. However, he never lost consciousness in such a situation until the day of the accident. He stated, "I never thought I would truly pass out. That's part of the job . . . I didn't think I needed to tell anybody about it because nothing bad had ever happened."

Foster testified that in his twelve years of being an EMT, he had seen many horrific injuries, including burns and broken bones piercing the skin. He stated that as an EMT, he administered intravenous medications and gave shots involving needles on a regular basis without issue.

On July 11, 2016, Foster's insurance carrier took his recorded statement. In that statement, Foster claimed he did not know the cause of his loss of consciousness. He neglected to mention an issue with needles on the day of the accident.

On February 27, 2017, the deputy commissioner issued an opinion denying Foster's claim. Although the deputy commissioner found that Foster's injuries occurred in the course of his employment, he concluded that the accident did not arise out of his employment. Foster appealed to the full Commission.

On August 16, 2017, the full Commission reversed the deputy commissioner in a split decision, finding that Foster's injuries were compensable as they arose out of his employment. The Commission stated that,

> The medical records consistently described [Foster's] loss of consciousness as occurring while the subject medical procedure was being performed. This timing, along with the claimant's history of feeling light-headed when observing lumbar puncture procedures, and the absence of evidence of any other likely cause of his loss of consciousness, allows [Foster] to meet that burden [of proving by a preponderance of the evidence that he sustained a compensable injury].

Lynchburg General appeals to this Court.

<u>Analysis</u>

On appeal, Lynchburg General assigns error to the Commission's finding that Foster suffered a compensable injury. Specifically, Lynchburg General argues that the evidence failed to establish that his injuries "arose out of" Foster's employment. Lynchburg General further contends that the Commission erred in relying on inferences to establish causation.

"Whether an injury arises out of and in the course of employment involves a mixed question of law and fact, which we review *de novo* on appeal." <u>Blaustein v. Mitre Corp.</u>, 36 Va. App. 344, 348, 550 S.E.2d 336, 338 (2001) (citing <u>Norfolk Cmty. Hosp. v. Smith</u>, 33 Va. App. 1, 4, 531 S.E.2d 576, 578 (2000)); <u>see also</u> <u>Dublin Garment Co. v. Jones</u>, 2 Va. App. 165, 167, 342 S.E.2d 638, 638 (1986).

Under Virginia's workers' compensation statutes,

> "'[I]njury' means only injury by accident arising out of and in the course of the employment." Code § 65.2-101. Thus, "[f]or an injury to be compensable under the Workers' Compensation Act, the claimant must prove by a preponderance of the evidence three elements: (1) that the injury was caused by an accident; (2) that the injury was sustained in the course of the employment; and (3) that the injury arose out of the employment."

<u>Dollar Tree Stores, Inc. v. Wilson</u>, 64 Va. App. 103, 108, 765 S.E.2d 151, 153 (2014) (quoting <u>Southland Corp. v. Parson</u>, 1 Va. App. 281, 283-84, 338 S.E.2d 162, 163 (1985)). "'The concepts "arising out of" and "in the course of" employment are not synonymous and both conditions must be proved before compensation will be awarded.'" <u>PYA/Monarch & Reliance Ins. Co. v. Harris</u>, 22 Va. App. 215, 221, 468 S.E.2d 688, 691 (1996) (quoting <u>Marketing Profiles, Inc. v. Hill</u>, 17 Va. App. 431, 433, 437 S.E.2d 727, 729 (1993) (*en banc*)).

"Virginia employs the actual risk test" in determining whether an injury arises out of employment. <u>Southside Va. Training Ctr. v. Ellis</u>, 33 Va. App. 824, 828, 537 S.E.2d 35, 37 (2000) (quoting <u>Vint v. Alleghany Reg'l Hosp.</u>, 32 Va. App. 60, 63, 526 S.E.2d 295, 297

(2000)). Under this test, an injury is considered to have arisen out of the employment "if the manner in which the employer requires the work to be performed is causally related to the resulting injury." Id. (quoting Vint, 32 Va. App. at 63, 526 S.E.2d at 297). The general rule is that "[t]he causative danger must be peculiar to the work and not common to the neighborhood." Turf Care, Inc. v. Henson, 51 Va. App. 318, 325, 657 S.E.2d 787, 790 (2008) (quoting Basement Waterproofing & Drainage v. Beland, 43 Va. App. 352, 356-57, 597 S.E.2d 286, 288 (2004)). "The mere happening of an accident at the workplace, not caused by any work related risk or significant work related exertion, is not compensable." Plumb Rite Plumbing Serv. v. Barbour, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989).

While the Commission may infer from the evidence that a work-related risk caused an employee to sustain an injury, "[t]he claimant [has] the burden of establishing, by a preponderance of the evidence, and not merely by conjecture or speculation, that [they] suffered an injury by accident which arose out of and in the course of the employment." Cent. State Hosp. v. Wiggers, 230 Va. 157, 159, 335 S.E.2d 257, 258 (1985). "An award based upon surmise or conjecture will be set aside." Sullivan v. Suffolk Peanut Co., 171 Va. 439, 443, 199 S.E. 504, 506 (1938). "If the evidence shows that it is just as probable that the disability resulted from a cause which is not compensable, as it is that it resulted from one which is compensable, the claimant has not sustained the burden of proof." Van Geuder v. Commonwealth, 192 Va. 548, 557-58, 65 S.E.2d 565, 571 (1951) (quoting Carter v. Hercules Powder Co., 182 Va. 282, 288, 28 S.E.2d 736, 738 (1944)).

In this case, the Commission determined that there was sufficient evidence to prove that Foster's injuries were compensable. We disagree. Foster's own testimony was inconclusive as to whether he was "light-headed" every time he had assisted in similar procedures. Next, the medical records merely established a correlation between Foster having observed the procedure

and his loss of consciousness. Finally, there were several other potential causes that were not ruled out by evidence.

Foster's own testimony that he previously felt light-headed when observing similar procedures was inconclusive about the cause of his loss of consciousness. In fact, Foster initially claimed that he was unaware of what caused his loss of consciousness. He failed to testify that the light-headedness occurred *during each* of the six to twelve times he had assisted in a lumbar puncture procedure. He further testified that he never lost consciousness in such a situation, and therefore, he did not "think he needed to tell anybody about it." Significantly, as an EMT, Foster had been trained in such procedures and had witnessed numerous scenes far more horrendous than the lumbar puncture procedure. See Hess, 68 Va. App. at 199, 806 S.E.2d at 418 (claimant's traumatic experience of witnessing a mutilated body following a car crash was not a "sudden or unexpected shock or fright" for a State Trooper with training and experience in fatal accidents and crash scene reconstruction); Anthony, 36 Va. App. at 102, 548 S.E.2d at 275 (claimant, a social worker who was assaulted, was denied benefits because physical confrontations were not unusual occurrences in claimant's work environment).

The Commission inferred that the cause of Foster's vasovagal episode was an emotional reaction to observing the use of the lumbar puncture needle. However, the medical records relied upon by the Commission, at most, established a correlation between Foster's observation of the procedure and his loss of consciousness. The July 1, 2016 emergency department record only established that Foster's vasovagal episode and the resulting injuries occurred following the attempted lumbar procedure. The July 8, 2016 report from a nurse practitioner similarly stated that Foster's vasovagal episode happened "while assisting a procedure" and that he fell as a result of the episode. Further, there is no support in the medical records for Foster's testimony that he previously felt light-headed when observing similar procedures. While these records

established when the vasovagal episode took place, they did not establish what *caused* the episode.

In support of his argument that medical evidence is not necessary in establishing causation, Foster relies on Strictly Stumps, Inc. v. Enoch, 33 Va. App. 792, 537 S.E.2d 19 (2000). In that case, a tree fell on the claimant's foot, a fact which was corroborated by an eyewitness. The claimant did not pursue medical treatment until a year later. Medical records referenced a right foot work injury, but never provided an opinion as to causation. In Enoch, this Court noted that the medical records did not reference "an alternative trauma or other causative factor." Id. at 796, 537 S.E.2d at 21. It was additionally observed that "[t]he record in [Enoch] does not establish that the medical issue was so complex that the commission made findings in an area that could only be properly decided by medical experts." Id.

As Lynchburg General properly asserts, the issues in this case involve a "non-physical, internal reaction" that is "more complex than a physical, external injury" as was the case in Enoch. Non-physical internal or emotional injuries, like the vasovagal syncope suffered by Foster, can be caused by many factors that may not be immediately apparent to the claimant or to an eyewitness. This Court in Enoch also relied on the fact that there was no discussion of "an alternative trauma or other causative factor." Here, there are several possible alternative causes for Foster's vasovagal episode present in the record including, but not limited to, Foster's diagnosed Kawasaki disease,[2] food allergies, and abnormally high blood glucose levels. As the dissenting commissioner correctly stated, the information in the medical records "is purely anecdotal and not dispositive of the issue before us."

---

[2] The Mayo Clinic definition of "vasovagal syncope" submitted into evidence by Foster expressly references "heart disorders" as a possible cause of vasovagal syncope.

The Commission's decision was based upon the factual finding that Foster's vasovagal episode was an emotional reaction to observing the use of the lumbar puncture needle. No credible evidence exists in the record to support a finding that Foster's injuries were caused by a non-physical or emotional factor. Therefore, we must reverse the Commission's decision.

<u>Reversed.</u>