COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Senior Judge Annunziata

UNPUBLISHED

QUEST FOR EXCELLENCE LEARNING AND
  ACCIDENT FUND INSURANCE COMPANY
  OF AMERICA

v.      Record No. 0255-21-4

REBECCA NEWSOM

MEMORANDUM OPINION[*]
PER CURIAM
JULY 20, 2021

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

(Kwabena A. Akowuah; Ford Richardson, PC, on brief), for
appellants.

(Andrew S. Kasmer, on brief), for appellee.

Quest for Excellence Learning ("Quest") and Accident Fund Insurance Company of

America (collectively "employer") appeal a decision of the Workers' Compensation Commission

affirming the deputy commissioner's award to Rebecca Newsom for temporary total disability

benefits beginning November 26, 2019, and continuing until conditions justify modification, and

medical benefits for injuries to her left ankle and left knee for as long as necessary.  On appeal,

employer contends that the Commission's fact findings that "Newsom sustained an injury by

accident to her left knee" and "sustained an injury by accident occurring in the course of her

employment" are not supported by credible evidence.  Upon reviewing the record and briefs of

the parties, we conclude that this appeal is without merit.  Accordingly, we summarily affirm the

decision of the Commission.  See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Background

At the hearing before the deputy commissioner, Newsom, a pre-school teacher, testified that Quest instructed her to park in the Harris Teeter parking lot located next to Quest when the school's parking lot was full. On November 26, 2019, Newsom parked in Harris Teeter's parking lot and walked from her car toward the school. After she entered Quest's property, she walked down a grassy slope and slipped on wet grass, falling back on her left leg. Newsom testified that she could have taken a different route from the Harris Teeter parking lot, along a street adjoining the school, but did not do so because it was a busy, one-way street and did not have a sidewalk. She also testified that she always walked down this slope from the Harris Teeter parking lot, other Quest employees took the same route, and she was never reprimanded or cautioned by Quest against taking that route. Newsom stated that no foot path or paver stones were along the route, and she walked "cautiously" because the hill was sloped.

Mike Hummer, Quest's owner, testified that there were three routes employees could use to get to the school from Harris Teeter's parking lot. They could walk the route Newsom took, they could walk along the one-way street where traffic was "very slow," or they could walk where there were steps leading down to level ground and then up into the school's parking lot. Hummer did not recall if many employees used the route Newsom took but stated that, several years before this incident, he had advised another teacher that this route "is not the direction to go." Hummer testified that the hill's steep grade and a drainage ditch at the bottom caused the grass to be wet most of the time. He confirmed that Newsom's fall occurred on school property and that he had never advised Newsom not to take the route on which she fell.

Newsom testified that after she fell, she had pain in her head, left arm, left knee, and left ankle. She was treated at StoneSprings Hospital where she reported she had left ankle pain secondary to a fall. The hospital's emergency provider's report states that Newsom conveyed

she "was walking down hill on grass and slipped resulting in a fall and her leg twisting back." At StoneSprings, Newsom was diagnosed with a "[l]eft ankle fracture dislocation with disruption of the mortise."

On December 2, 2019, Newsom began treating with Dr. David S. Goodwin who assessed a "[c]losed nondisplaced fracture of lateral malleolus of left fibula" and a "[c]losed fracture of posterior malleolus of left tibia[.]" On December 3, 2019, Dr. Goodwin operated on Newsom's left ankle, and on December 11, 2019, during a follow-up appointment, he provided Newsom with a CAM boot, a controlled ankle motion walking boot, and prescribed a "foot/ankle orthosis." He also advised Newsom to continue to avoid bearing weight on her left leg and prescribed a knee scooter.

At her February 10, 2020 appointment, Newsom told Dr. Goodwin that she was having left knee pain, which had begun the prior week and happened when she tried to put her knee on the knee scooter. Dr. Goodwin's notes stated that Newsom's pain was aggravated by daily activities and she had been doing physical therapy for her left ankle during the prior week. Dr. Goodwin's notes also provided that Newsom reported her knee "slip[ped]" after [physical therapy] and feels like air rushes under the patella. She has not tried to put full weight on her knee b/c of the ankle." Dr. Goodwin's notes further stated that, "[p]ain started at time of fall when she sustained ankle fracture but is now limiting her ability to begin weight bearing[.]" He noted that Newsom had "reconstructive" knee surgery forty years ago after a gymnastics injury. Dr. Goodwin assessed left knee osteoarthritis and rupture of the anterior cruciate ligament. An MRI performed on February 14, 2020, showed left knee medial and lateral meniscus tears and osteoarthritis.

On May 19, 2020, Dr. Goodwin performed a left knee arthroscopic partial medial and partial lateral meniscectomy and arthroscopic trochlea chondroplasty. Dr. Goodwin's operative

report stated that Newsom's "left knee pain . . . began acutely after a fall where she also sustained a complicated ankle fracture." On a June 1, 2020 "Claimant Status Form," under the heading "Causation," Dr. Goodwin answered "yes" to the question, "Did the November 26, 2019 accident aggravate her underlying knee condition and/or cause her current knee condition and need for her May 2020 knee surgery?" Dr. Goodwin's notes for Newsom's June 19, 2020 post-operative visit stated that Newsom had "soreness around her patella," knee buckling, and "[l]ower leg (ankle)" pain. Dr. Goodwin assessed Newsom with "[c]omplex regional pain syndrome" of the left lower extremity, which was "significantly impacting" her knee and ankle rehabilitation.

A surveillance video showing Newsom's fall was played at the hearing before the deputy commissioner. The Commission affirmed the deputy commissioner's decision, finding that the injury occurred in the course of Newsom's employment, and she sustained a left knee injury as a result of the accident. Employer appeals the Commission's decision to this Court.

Analysis

Injury By Accident

Employer contends that the Commission's factual findings were not supported by credible evidence to justify a finding that Newsom sustained an injury by accident to her left knee on November 26, 2019. Employer also argues that the Commission made fact findings that were not supported by the record and were based on speculation, and likewise argues that Dr. Goodwin's opinion that Newsom's accident aggravated her pre-existing condition was not supported by the medical records.

"On appeal, this Court views the evidence in the light most favorable to the prevailing party below." Hess v. Virginia State Police, 68 Va. App. 190, 194 (2017) (quoting Advance Auto & Indem. Ins. Co. v. Craft, 63 Va. App. 502, 508 (2014)). "[F]actual findings of the

- 4 -

[C]ommission will not be disturbed if based on credible evidence." Id. (quoting Anthony v. Fairfax Cty. Dep't of Family Servs., 36 Va. App. 98, 103 (2001)). A compensable injury is defined as "only injury by accident arising out of and in the course of the employment[.]" Code § 65.2-101. "As the factfinder, the [C]ommission is charged with the responsibility of resolving questions of credibility and of controverted facts." Metropolitan Washington Airports Auth. v. Lusby, 41 Va. App. 300, 312 (2003) (quoting Virginia Emp. Comm'n v. Gantt, 7 Va. App. 631, 635 (1989)).

The record shows, as the Commission noted in its opinion, that Newsom testified she felt pain in her knee after the fall, and she reported to the emergency doctor at StoneSprings only that she felt left ankle pain after the fall. Newsom also stated that she first reported to Dr. Goodwin at her February 10, 2020 appointment that she had started having left knee pain during the prior week when she tried to use her knee scooter. Dr. Goodwin's February 10, 2020 report stated that Newsom had "not tried to put full weight on her knee b/c of the ankle," and "[p]ain started at time of fall when she sustained ankle fracture but is now limiting her ability to begin weight bearing, pain primarily along quad tendon but is diffuse at times." From this evidence, the Commission inferred that Newsom's failure to "initially report" a knee injury "may be explained by the limits imposed on her activity and mobility following the accident." Employer contends that this inference was based on speculation. However, Dr. Goodwin's notes showed that after he operated on Newsom's ankle, he provided Newsom with a walking boot and prescribed a brace. He also advised Newsom to continue to avoid bearing weight on her left leg and prescribed the knee scooter. After the knee surgery, Dr. Goodwin's operative report stated that Newsom's "left knee pain . . . began acutely after a fall where she also sustained a complicated ankle fracture," and Newsom had started physical therapy for her ankle the week before she reported the left knee pain. Newsom testified that she felt knee pain when she tried to use the

knee scooter, and Dr. Goodwin's notes expressly stated that Newsom had not tried to put full weight on her left knee "because of the ankle." Thus, Dr. Goodwin's reports and Newsom's testimony, which the Commission found credible, support the Commission's reasonable inference that the limits on Newsom's activity and mobility after her ankle operation *may* explain why she did not report left knee pain to Dr. Goodwin until after she started physical therapy and tried to use the knee scooter.[1] "The Commission was entitled to draw reasonable inferences from the evidence . . . . Under the applicable standard of review, we do not disturb 'inferences drawn . . . from the facts proven' as long as they are reasonable." O'Donoghue v. United Cont'l Holdings, Inc., 70 Va. App. 95, 112 (2019) (quoting Turf Care, Inc. v. Henson, 51 Va. App. 318, 324 (2008)).

In addition, the February 14, 2020 MRI revealed tears of Newsom's lateral and medial meniscus. Employer conceded in its opening brief that a meniscus tear constitutes "an obvious sudden mechanical or structural change in the body." See Hoffman v. Carter, 50 Va. App. 199, 212 (2007) (to prove injury by accident, claimant must prove, *inter alia*, "an obvious sudden mechanical or structural change in the body" (quoting Chesterfield County v. Dunn, 9 Va. App. 475, 476 (1990))). On the June 1, 2020 "Claimant Status Form," under the heading "Causation," Dr. Goodwin answered "yes" to the question, "Did the November 26, 2019 accident aggravate her underlying knee condition and/or cause her current knee condition and need for her May 2020 knee surgery?" Regardless of when Newsom reported the left knee pain, the Commission accepted Dr. Goodwin's opinion that the fall aggravated Newsom's underlying knee condition "and/or" caused the need for the knee surgery. "The opinion of the treating physician is entitled

---

[1] We note that the Commission's use of the word "may" indicates that this explanation was only a possible, not the only, reason for Newsom's failure to "initially report" knee pain. "May" is defined, in pertinent part, as "be[ing] in some degree likely to[.]" May, Webster's Third New International Dictionary (3d ed. 1993).

to great weight, although the [C]ommission is not required to accept it[.]" Vital Link, Inc. v. Hope, 69 Va. App. 43, 64 (2018) (quoting United Airlines, Inc. v. Hayes, 58 Va. App. 220, 238 (2011)).  Here, the Commission expressly stated that Dr. Goodwin's opinion was entitled to "significant weight."  Further, employer presented no contrary or any medical evidence in the case.  In addition, Newsom's description of her fall, that she slipped and fell back on her left leg, and the emergency room report stating that "her leg twist[ed] back," also supported a finding that she injured her knee when she fell.

"[W]e do not re-weigh the preponderance of the evidence after the [C]ommission has done so."  Georgia-Pac. Corp. v. Robinson, 32 Va. App. 1, 9 (2000).  "Our review is limited to determining whether the record contains credible evidence to support the [C]ommission's findings."  Id.  As stated above, the Commission is entitled to give the opinion of the treating physician "great weight."  See Gilbane v. Guzman, 59 Va. App. 128, 135 (2011).  Here, the record, including the medical records and Newsom's testimony, contains more than ample credible evidence to support the finding that Newsom's accident caused an injury to her left knee.

### In the Course of Employment

Employer argues that it was "unreasonable" for it to have anticipated or expected that its employees would "traverse" the "dangerous, non-established" and undesignated route that Newsom was on when she fell.  Employer also contends that Newsom was not "required to take the route she did," and the wet drainage ditch was not a place where it would have reasonably expected her to be.

"Whether an injury arises out of and in the course of employment involves a mixed question of law and fact, which we review *de novo* on appeal."  Snyder v. City of Richmond Police Dep't, 62 Va. App. 405, 411 (2013) (quoting Blaustein v. Mitre Corp., 36 Va. App. 344,

348 (2001)). The legal component of that question is reviewed *de novo*. O'Donoghue, 70 Va. App. at 103. The accompanying "factual findings of the [C]ommission are binding if they are supported by credible evidence." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894 (1991). "[T]he words 'in the course of' refer to the time, place and circumstances under which the accident occurred." Hess, 68 Va. App. at 196 (quoting Conner v. Bragg, 203 Va. 204, 208 (1962)).

> The Supreme Court of Virginia drew a "bright line" at the employer's door in Brown v. Reed, 209 Va. 562, 565 (1969), when it held that if an employee is injured while going to and from his work *and* while on the employer's premises, the injury is treated at law as though it happens while the employee is engaged in his work at the place of its performance.

Hunton & Williams v. Gilmer, 20 Va. App. 603, 605 (1995) (alteration in original).

Newsom, as she was instructed to do, parked in the Harris Teeter parking lot, then walked to Quest's property. Hummer confirmed that Newsom's fall occurred on Quest's property and that he had never advised Newsom not to take the route on which she fell. Thus, the evidence showed that Quest did not communicate to Newsom that she was not supposed to take the course she took between the Harris Teeter parking lot and Quest's property. Indeed, Hummer testified there were three ways employees could walk to the school from Harris Teeter's parking lot, one of which was the path taken by Newsom. Further, Newsom testified that she always walked down the slope from the Harris Teeter parking lot, other employees took the same route, and she was never reprimanded or cautioned against taking that course. In addition, as the Commission found, even if Newsom "carelessly chose to" walk along the path which precipitated her fall, a claimant's negligence "does not bar recovery" under the Workers' Compensation Act. "Negligence is not a factor in our analysis." Virginia Tree Harvesters v. Shelton, 62 Va. App. 524, 536 (2013); see Uninsured Employer's Fund v. Keppel, 1 Va. App. 162, 165 (1985)

("Negligence, regardless how gross, does not bar a recovery for workers' compensation benefits."). Thus, Newsom's activity of walking from the parking lot to Quest's property on a route used by other employees and where Quest had not told her not to use this pathway, fell within the scope of her employment.

For these reasons, we summarily affirm the Commission's decision. Rule 5A:27.

Affirmed.