COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judge Beales, Huff and Senior Judge Annunziata


RICHMOND PUBLIC SCHOOLS,
 VIRGINIA ASSOCIATION OF COUNTIES
 GROUP S, AND RISK MANAGEMENT
 PROGRAMS, INC.
                                                          MEMORANDUM OPINION*
v.       Record No. 0354-21-2                                  PER CURIAM
                                                            AUGUST 31, 2021
ANGELA COY


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            (Jonnell P. Lilly; Harrell & Chambliss, LLP, on brief), for
            appellants.

            (Michele Lewane; Injured Workers Law Firm, on brief), for
            appellee.


        Richmond Public Schools, Virginia Association of Counties Group S, and Risk

Management Programs, Inc. (collectively "employer") appeal a decision of the Workers'

Compensation Commission amending the claim of Angela Coy (claimant) to include her neck as

a compensable body part. On appeal, employer contends that the Commission erred in finding

that claimant sustained a compensable neck injury on April 16, 2018 and in finding that the neck

injury and associated treatment were causally related to the compensable accident. Upon

reviewing the record and briefs of the parties, we conclude that this appeal is without merit. [1]

Accordingly, we summarily affirm the decision of the Commission. See Rule 5A:27.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The deputy commissioner found claimant's treating physicians' opinions that her neck
condition was related to her workplace injury were based on an inaccurate medical history and
that a medical record indicated claimant had treatments for her neck before the workplace
accident. The Commission reversed the deputy commissioner's opinion, finding

BACKGROUND

"Under settled principles of appellate review, we consider the evidence in the light most favorable to [claimant] as the prevailing party before the [C]ommission." Layne v. Crist Elec. Contractor, Inc., 64 Va. App. 342, 345 (2015). So viewed, the evidence in the record shows that on April 16, 2018, claimant, a substitute teacher, fell on her left shoulder while walking on uneven pavement at work. On April 19, 2018, claimant signed an "Employee's First Report of Injury," stating that she walked out of a door and tripped on a sidewalk, falling on her shoulder. X-rays were taken of her left arm, and an MRI showed a torn rotator cuff. On May 7, 2018, claimant began treating with Dr. Kenneth Zaslav, an orthopedic surgeon, who noted that her chief complaint was the "traumatic onset of left humerus pain that began 4/16/18 when she fell on her shoulder." On June 14, 2018, Dr. Zaslav performed a left rotator cuff repair.

At a September 12, 2018 follow-up appointment with Dr. Zaslav, claimant reported "achy, stiff," and laterally located pain. Claimant's symptoms were improving, but she was experiencing "tingling down her left arm to her hand" when she looked "down to the right." Dr. Zaslav recommended that claimant increase her physical therapy treatments to three times per week and that the physical therapist "add traction to the neck for some pinched nerve symptoms she is having."

At her October 10, 2018 appointment with Dr. Zaslav, claimant reported slight improvements in her symptoms but was "still stiff." Dr. Zaslav ordered x-rays of the cervical spine and assessed claimant with cervical radiculopathy, noting that "[d]espite working really hard with the therapist . . . she has been unable to gain active ROM." Dr. Zaslov was concerned

"preponderating evidence in the record demonstrates that the claimant sustained a neck injury on April 16, 2018." "The Commission is not bound by the findings of a deputy commissioner." Hess v. Virginia State Police, 68 Va. App. 190, 194 (2017); see Code § 65.2-705(A).

that the rotator cuff repair had partially failed or there was "a neurological reason for the weakness as [claimant] [wa]s also having numbness and burning down the left arm." He ordered an EMG and ultrasound of claimant's left upper extremity and stated that if the test was negative, he would order an MRI "to look at the neck as the source."

On November 14, 2018, Dr. Zaslav noted that the EMG of claimant's supraspinatus and shoulder nerves was normal, but the ultrasound showed "supraspinatus partial failure and thinning," which could have explained her pain but not her "significant weakness." He assessed claimant with cervical radiculopathy and ordered a cervical MRI "to rule out cervical stenosis." The November 14, 2018 MRI showed "mild cervical spondylosis."

At her January 7, 2019 appointment with Dr. Zaslav, claimant reported "a burning pain [running] down her lateral arm from her neck." After reviewing the MRI and EMG studies, Dr. Zaslav recommended an "arthroscopic release of scar, manipulation[,] and consider[ation of] revision repair if needed or possible." He performed arthroscopic surgery on February 28, 2019 and found claimant's left shoulder rotator cuff repair had failed.

On August 21, 2019, claimant told Dr. Zaslav that she was having "muscle spasms" in her neck. At claimant's September 4, 2019 appointment, Dr. Zaslav noted that her C-spine had "really gotten aggravated" and "[d]uring the fall that began this whole injury cycle with the shoulder and neck, she fell and the neck was aggravated at that time, and x-rays show clear C4-5, C5-6 DDD." He again assessed claimant with cervical radiculopathy and ordered another cervical MRI. On December 9, 2019, Dr. Zaslav reviewed the October 2019 MRI, finding that it showed "[l]oss of normal cervical lordosis with multilevel spondylosis."

Dr. Zaslav referred claimant to Dr. Charles Gibellato for pain management. Dr. Gibellato's progress notes about claimant's January 22, 2020 office visit state that claimant's "Chief Complaint" was "Pain of the Neck." Claimant also told Dr. Gibellato that she had pain

predominantly in her left shoulder and neck that was radiating into her shoulders down her left arm. She told Dr. Gibellato that neck movement and twisting "exacerbate[d] the pain." On January 22, 2020, Dr. Gibellato diagnosed claimant with cervical radiculopathy, cervical degenerative disc disease, and osteoarthritis of the cervical spine. He also noted that claimant reported that her "pain has been present since April 16th, 2018 work injury." Dr. Gibellato prescribed physical therapy and recommended that claimant consider cervical epidural injections.

On April 8, 2020, Dr. Zaslav authored a "To Whom It May Concern" letter, which stated, "This letter[']s intent is to advise that [claimant]'s Left Shoulder and Neck injuries are a result of the same work comp injury." On August 11, 2020, Dr. Zaslav signed an "Injured Workers" questionnaire in which he stated that he treated claimant for a rotator cuff injury and cervical radiculopathy, both conditions were more likely than not related to her April 16, 2018 workplace accident, and the accident had aggravated claimant's pre-existing cervical condition.

On June 2, 2020, Dr. Gibellato completed a questionnaire stating that he treated claimant for left shoulder and neck pain which were more likely than not caused by the April 16, 2018 work accident. In response to the question regarding pre-existing conditions aggravated by the April 16, 2018 accident, he responded, "I am not aware of any pre-existing left shoulder or neck issues."

On July 27, 2020, claimant saw Dr. Zaslav, who reported that she was experiencing "chronic neck and shoulder problems" and was waiting for resolution of a workers' compensation issue to resume treatment with Dr. Gibellato. In his assessment, Dr. Zaslav wrote, "It is very clear to me that both problems came from the work injury."

ANALYSIS

"On appeal, this Court views the evidence in the light most favorable to the prevailing party below." Hess v. Virginia State Police, 68 Va. App. 190, 194 (2017) (quoting Advance Auto & Indem. Ins. Co. v. Craft, 63 Va. App. 502, 508 (2014)). "[F]actual findings of the [C]ommission will not be disturbed if based on credible evidence." Id. (quoting Anthony v. Fairfax Cty. Dep't of Family Servs., 36 Va. App. 98, 103 (2001)). A compensable injury is defined as "only injury by accident arising out of and in the course of the employment[.]" Code § 65.2-101. "As the factfinder, the [C]ommission is charged with the responsibility of resolving questions of credibility and of controverted facts." Metropolitan Washington Airports Auth. v. Lusby, 41 Va. App. 300, 312 (2003) (quoting Virginia Emp. Comm'n v. Gantt, 7 Va. App. 631, 635 (1989)).

Employer contends that the Commission erred in finding claimant sustained a compensable neck injury on April 16, 2018. Employer asserts that the opinions of Dr. Zaslav and Dr. Gibellato were not credible when they concluded that the neck injury occurred on April 16, 2018.

Credible evidence in the record supports the Commission's findings. The Commission acknowledged that claimant did not "initially report a neck injury." However, as the Commission found, after Dr. Zaslav performed surgery on claimant's shoulder, he noted that claimant experienced "tingling" down her arm when she looked down and to the right. As early as September 2018, Dr. Zaslav opined that this was a symptom of a pinched nerve and recommended that the physical therapist apply traction to claimant's neck to resolve it. In October 2019, Dr. Zaslav ordered x-rays of her cervical spine and assessed claimant with cervical radiculopathy. He noted that claimant continued to experience weakness, numbness, and burning in her left arm from her neck and ordered imaging studies to determine if this was

- 5 -

caused by a neurological condition or a problem with her neck. The November 2018 MRI showed that she suffered from cervical spondylosis.

Further, on January 7, 2019, Dr. Zaslav noted that he was providing conservative treatment for claimant's cervical spine pain, which had "really gotten aggravated" by September 4, 2019. He opined that claimant's neck was "aggravated" by her fall at work, and the October 2019 MRI showed the loss of normal cervical lordosis with multilevel spondylosis. Moreover, in his April 2020 "To Whom it May Concern" letter, Dr. Zaslav opined that claimant's shoulder and neck injuries were the result of the same workplace injury. In the questionnaire response, Dr. Zaslav stated that claimant's workplace accident caused an aggravation of a prior cervical strain.

In addition, Dr. Gibellato treated claimant for neck pain in January 2020. Dr. Gibellato diagnosed her as having cervical radiculopathy, cervical degenerative disc disease, and osteoarthritis of the cervical spine. Dr. Gibellato completed the questionnaire, stating that he treated claimant for left shoulder and neck pain, which was more likely than not caused by the April 16, 2018 work accident. Claimant returned to Dr. Zaslav in July 2020, and he reported that she was experiencing "chronic neck and shoulder problems."

Considering Dr. Zaslav's records describing the "progression" of claimant's neck symptoms, and the questionnaire responses of both Dr. Zaslav and Dr. Gibellato, credible evidence supports the Commission's finding that claimant sustained a compensable neck injury on April 16, 2018.

Employer also argues that the Commission erred in finding claimant's neck injury and associated treatment were causally related to the compensable April 16, 2018 work accident. "While causation is a factual determination, 'the standards required to prove causation and whether the evidence is sufficient to meet those standards are legal issues which [the Court of

Appeals] must determine.'" Hess, 68 Va. App. at 195 (quoting Anthony, 36 Va. App. at 103). "A determination by the Commission upon conflicting facts as to causal relationship is conclusive and binding on appeal, absent fraud, when such finding is supported by competent, credible evidence." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101 (1983). "Causation is usually proven by medical evidence." Clinch Valley Med. Ctr. v. Hayes, 34 Va. App. 183, 192 (2000). "Though not necessarily conclusive, 'the opinion of the treating physician is entitled to great weight.'" Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 753 n.4 (2004) (quoting H.J. Holz & Son, Inc. v. Dumas-Thayer, 37 Va. App. 645, 655 (2002)).

The record contains credible evidence to support causation. See Watkins, 225 Va. at 101. As addressed above, both Dr. Zaslav and Dr. Gibellato opined that claimant more likely than not injured her neck during the April 16, 2018 workplace injury. These treating physicians' records contained notations stating that her neck was injured in the fall, and in April 2020, Dr. Zaslav authored the letter stating, "This letter[']s intent is to advise that Angela Coy's Left Shoulder and Neck injuries are a result of the same work comp injury." The Commission afforded the treating physicians' opinions great weight. See Berglund Chevrolet, 43 Va. App. at 753 n.4. Further, the record contains no evidence in conflict with the treating physicians' opinions. Moreover, the Commission found that, although claimant may have had a prior diagnosis of neck problems, the record contained no evidence that she had received treatment for a neck injury or condition. Thus, credible evidence supports the Commission's conclusion on causation, and, therefore, the conclusion is binding on this Court. See Clinch Valley Med. Ctr., 34 Va. App. at 193.

For all of these reasons, we summarily affirm the decision of the Commission. See Rule 5A:27.

Affirmed.