COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Fulton and Friedman
Argued by videoconference


INOVA HEALTH SYSTEMS, ET AL.

MEMORANDUM OPINION[*] BY
v.      Record No. 0906-24-1      JUDGE RANDOLPH A. BEALES
AUGUST 12, 2025

NHA-UYEN NGUYEN


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Lynn McHale Fitzpatrick (Franklin & Prokopik, P.C., on brief), for appellants.

No brief or argument for appellee.


Inova Health Systems and Inova Health Systems Foundation (collectively "Inova")

appeal from the decision of the Virginia Workers' Compensation Commission awarding

Nha-Uyen Nguyen temporary total disability benefits for a psychological injury. Inova argues

that Nguyen's psychological injury did not arise out of or occur in the course of her

employment—and that her psychological injury was not the consequence of a compensable

"shock or fright." Because, given the deferential standard of review for this appeal, we cannot

say that there was no credible evidence in the record to support the Commission's finding that

Nguyen experienced a sudden or unexpected "shock or fright," we do not disturb the judgment of

the Commission in this case.

## I. BACKGROUND

"On appeal from a decision of the Commission, 'the evidence and all reasonable

inferences that may be drawn from the evidence are viewed in the light most favorable to the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

prevailing party below'"—in this case, the employee, Nguyen. *Jalloh v. Rodgers*, 77 Va. App. 195, 200 n.2 (2023) (quoting *City of Charlottesville v. Sclafani*, 70 Va. App. 613, 616 (2019)).

Nguyen testified at the evidentiary hearing before a Deputy Commissioner of the Virginia Workers' Compensation Commission that on July 1, 2021, she was employed as "an ultrasound technologist or a sonographer" in the emergency room of Inova Loudoun Hospital's Cornwall Campus, where she had worked for over 20 years. She testified that she had performed numerous ultrasound scans and diagnostic tests in her career on a variety of body parts, "from OB/GYN [Obstetrics/Gynecology] to thyroids, carotids, veins, testicles, ovaries, small lumps, bumps, everything."

Nguyen recounted that on the morning of July 1, 2021, she "was on [her] shift at Cornwall Hospital Inova" and "was down in the ER [emergency room]" when "[t]he doctor ordered a [v]enous Doppler on a patient."[1] She noted that for that particular diagnostic test, she would typically "scan from the groin down to the ankle of the affected side" and also "scan the contralateral side of the non-affected side." She explained that when the patient is on the table, "typically, they're in a gown, especially through the ER. They're in a gown. They're covered up. And I would have my own sheet for the patient" in order "to create a barrier between the patient" and the technologist performing the scan. Nguyen further explained, "I would have my towels, my washcloth to cover them, like when, especially, when I start out scanning in the groin area, I would make sure that their private part is covered." She also noted that either the patient or the technologist could request that a chaperone be present "whenever scanning private body parts" in order to make both the patient and the technologist "feel comfortable" during the scan.

---

[1] A venous Doppler ultrasound is a non-invasive diagnostic test used to check blood flow in the veins (particularly in the lower extremities) and to detect certain medical conditions such as deep venous thrombosis. *See deep venous thrombosis, diagnosis of.*, *Attorneys' Dictionary of Medicine* (2024).

- 2 -

Nguyen went on to recount that she "entered the ER to scan this patient," where she "greeted him" and "introduced myself" before telling "him what I was going to do." She recalled that the patient initially "was very friendly, talkative," but the patient then began "asking me a lot of questions that w[ere] inappropriate, at the time, when I was trying to perform his test." Nguyen noted that she "did my best to answer his questions" and that she "was trying to be professional the best I could." She then described the patient's conduct at issue and her immediate reaction to that conduct, stating:

> I knew that it was just not normal because he tried to ask me out during the exam, and I told him, thank you, but I'm in a relationship, I have a boyfriend, and he just wouldn't take no for an answer, and he continued. He said, well, just let me know if you ever want to go out, and as I was finishing up the affected leg, I said, sir, I need to scan the contralateral side just for documentations, and when I was trying to adjust my machine to annotate the correct side, he exposed himself to me, completely just exposed his private parts to me, and I was, at that point, where I just threw a towel to cover him up and scanned that area real quick and leave, and so I came out, and I was just so upset and just anxious and just I couldn't believe what happened, and so I reported to the charge nurse at the time, Natalie, and I told her what happened, and one of the ER techs, medical techs, happened to hear my conversation.

Nguyen also reported the incident to her "supervisor, at the time, just to let him know what had happened to me."

Nguyen then described her emotional state in the aftermath of the incident, stating:

> I was very upset. I was very, just really anxious, just because it kind of just -- it made me really angry and it kind of opened up old wounds that happened to me at Inova Loudoun Hospital. In my earlier days, I experienced similar situations, but I was a rookie at the time and took it and was scared to get help, and I didn't get help at the time, and so what had happened back in July 2021, just kind of opened up those wounds for me.

When asked to expound on her past experiences with difficult patients, Nguyen testified:

> I've experienced several incidents where the patient was abusive towards me. I mean, we deal with it. It can be verbal abuse. They

- 3 -

get combative.  But those are some of the things that, as a health care provider, I know what I'm getting myself into, but when it becomes personal, when it's something sexually involved, and I've had incidents where my department, they have to implement this rule where whenever scanning a private body part to have a chaperon because of what I went through.

She noted that those prior experiences "happened anywhere between 2007 to maybe 2012, 2013"—nearly a decade or more before the July 2021 incident.

Nguyen then testified that on July 21, 2021, at the direction of her human resources director, Sarah Pavlik (who also told Nguyen to "apply for short term disability"), Nguyen went to see her primary care provider, Dr. Han Tonthat, M.D.  Nguyen recounted:

I explained to him [Dr. Tonthat] what had happened to me, and he asked me if I wanted to take meds [medicines] just to help with my anxiety, and I told him that I would like to approach the more holistic way because of my history.  I've been on meds before for something that I didn't have.  Therefore, I'm against taking meds. I just wanted to see if there's other options that I can take, more holistic route to start with that first.

Dr. Tonthat's case notes from Nguyen's medical visit provided:

Pt [Patient] presents noting that she has not been doing well.  She related that several weeks ago, she was sexually harassed at work while doing an U/S [ultrasound] in the ER on Jul[y] 1.  The man exposed himself to her and persistently asking her to date him. When she was able to get away, she informed the staff in the ER and also her supervisor.  During the week, she has also tried to get help from HR [human resources].  However, she hasn't been guided as to how to deal with this ordeal.  She has sought out a Therapist but it's not helping.  She has not been able to focus at work nor sleep at home.  She is constantly looking over her shoulders.  This event has also brought up past harassment.  No SI [suicidal ideation] or HI [homicidal ideation] noted presently.

Dr. Tonthat's case notes further provided that he "spent an hour discussing event and coping mechanism; offered anti-anxiety but patient would like to try to deal with this without meds;

continue with Therapist; consider getting Legal involved; consider time off to deal with issue; RTC [return to clinic] in 1 w[ee]k."[2]

Nguyen further testified that she "saw [her] acupuncturist" and "did a lot of self-meditation" as part of her holistic approach to recovery, including going "to the temple in Manassas to talk to the monks and did a lot of meditation there." She would also "do a lot of activities such as running, biking, I work out at the gym, and so during that time, that was sort of my therapy to run." In addition, Nguyen noted that she "saw the Chaplain at Inova, and she met up with me to just talk to me and help me." As part of Inova's Employee Assistance Program, Nguyen also met with an "online therapist" named Arlette Simmons for "[f]our sessions" beginning in "mid-August 2021" and continuing over the course of four weeks. Nguyen noted that the therapy sessions helped, but she stated that "it was very stressful as well" given certain restrictions with her therapist's schedule and the virtual format of the therapy sessions. After completing the four therapy sessions, Nguyen "spoke to [her] primary care doctor" again and "continue[d] to practice the holistic route." She pointed out, however, that she "still ha[s] night terrors" and "sleepless nights" since the incident.

---

[2] In a Cigna Behavioral Health Questionnaire dated August 9, 2021, Dr. Tonthat indicated, "Patient has difficulty gathering thoughts and often could not find her words. No SI [suicidal ideation] or HI [homicidal ideation] noted. Her most frequent refrain is from past sexual trauma." Dr. Tonthat went on to provide, "She [Nguyen] frequently expressed her regrets of not managing the situation better. One of her thoughts were to react violently against her assailant." Dr. Tonthat noted that Nguyen "is often teary eyed, angered and anxious without provocation," that she "has been more withdrawn, anxious and insomnic," and that she has been "having difficulty with focusing" and "is more forgetful since the incident." In addition, in an Attending Physician's Report dated March 1, 2023, Dr. Tonthat noted his findings after examining Nguyen, which included: "Panic attacks, anxious, confused, fear, PTSD [post-traumatic stress disorder], and sleep disorder." In that same report, Dr. Tonthat diagnosed Nguyen with "PTSD, anxiety, insomnia, unsafe/fearful of work environment"—and he indicated that Nguyen's disability originated from her work and that her disability began on July 20, 2021.

Nguyen, who was acting *pro se*, filed her claim for benefits[3] with the Commission on October 12, 2022, seeking temporary total disability benefits in the form of wage loss replacement from July 20, 2021, through September 7, 2021—the time period during which she was completely out of work.[4]  In her claim for benefits, Nguyen alleged, "I was working my shift in the Emergency Room and was sexually harassed by my patient."  She claimed that this incident injured her "[m]ental [s]tate" and resulted in a diagnosis of "anxiety," "[a]ltered mental status," and "PTSD."

Following the evidentiary hearing, the Deputy Commissioner issued an opinion dated July 21, 2023, denying Nguyen's claim for benefits.  The Deputy Commissioner found that "the subject event fails to meet the 'shocking, frightening, traumatic, catastrophic and unexpected' criteria" and that Nguyen's "psychological trauma resulting from the event was not so catastrophic or unexpected as to shock the conscience."  In so finding, the Deputy Commissioner noted that Nguyen's

> testimony reveals she has worked as an ultrasound technician for two decades.  In the course of her job duties, she has performed venous dopplers on a daily basis and scanned different body parts including ovaries and testicles.  While she testified that in the past she has refused to scan a patient's testicles without the presence of a second staff member, she did not deny that she in fact performed the ultrasound.  From this, it is reasonable to infer the claimant has previously been exposed to a patient's genital area while performing the duties of her job.

___

[3] Nguyen filed her claim for benefits against Inova Health Systems, Inova Health System Foundation (Insurance Carrier), and Gallagher Basset Services (Claim Administrator).

[4] Nguyen testified before the Deputy Commissioner that because she was denied short-term disability benefits, she took paid time off (PTO) while she was out of work.  As part of her requested disability award, Nguyen sought a credit for her paid time off.  She agreed with Inova that she was an hourly employee, that she worked an average of 40 hours per week, and that her pre-injury average weekly wage was $2,112.14.

Acknowledging that "the patient acted inappropriately when he exposed himself to the claimant" and that "there is no doubt in our mind that the claimant was subjected to disturbing behavior," the Deputy Commissioner nevertheless concluded, "Given the evidence, we do not find the patient's conduct on July 1, 2021 was 'out of the ordinary in terms of the injured employee's work duties, and was so dramatic or frightening as to shock the conscience.'"

Nguyen then sought review by the full Commission. In an opinion dated December 21, 2023, the majority of the Commission reversed the decision of the Deputy Commissioner and remanded with instructions "to consider whether the claimant proved entitlement to the requested disability benefits."[5] *See* Code § 65.2-705(A) (providing that the Commission is not bound by the findings of a Deputy Commissioner). The majority of the Commission acknowledged that Nguyen's "job as an ultrasound technician required that she sometimes be exposed to male genitalia." However, the Commission majority determined, "Inadvertent exposure or even required exposure to male genitalia during the performance of her work duties is qualitatively different than the unwanted, unsolicited exposure the claimant was subjected to in this case."

The Commission went on to find that "the patient's conduct caused the claimant to suffer a psychological injury." The Commission further found that "the exposure in the manner at issue was unexpected and shocking"—as "the evidence persuasively establishes that the patient's conduct was ill-intended and unnecessary." In addition, the Commission recognized, "It is not

_____

[5] In a dissenting opinion, the dissenting Commissioner stated:

> We must apply an objective standard in determining whether a situation was shocking or frightening. I do not find the claimant's testimony sufficient for us to determine that this event rose to the level necessary for the establishment of a compensable psychological injury by accident. The record before us does not reflect that this particular event was so dramatic and unexpected so as to shock the conscience. The claimant's own testimony was that she was angry, upset, and anxious. She did not testify to having been frightened, shocked, or traumatized.

usual or expected that a patient expose himself to a worker while speaking inappropriately and asking her out as she is performing her job." However, the Commission then concluded:

> Here, the scan was to the patient's legs. While an inadvertent showing may not be unexpected, the intentional exposure of a clear sexual nature was unusual and unexpected. In this case, we find circumstances were dramatic and unexpected enough to shock the conscience, despite the claimant's work duties and regular exposure to human genitalia. For these reasons, we find the claimant's injuries compensable and award the requested medical benefits.

On remand, the Deputy Commissioner found in an opinion dated January 5, 2024, that "the record establishes total work incapacity from July 21, 2021 through September 6, 2021." The Deputy Commissioner awarded Nguyen "$1,195 per week during temporary total disability beginning July 21, 2021 through September 6, 2021, inclusive"—and also granted Inova "a credit for benefits paid contingent upon the claimant's personal leave time being reinstated."

Inova then requested review by the full Commission of the Deputy Commissioner's decision on remand. Inova argued that Nguyen's "injury is not compensable" because (1) "the event was not something out of the ordinary in terms of the claimant's employment"; (2) "the event was not described as shocking, frightening, traumatic, catastrophic, and unexpected"; (3) the award was not made pursuant to an "objective standard as to whether the situation was shocking or frightening"; (4) the injury "is cumulative in nature"; and (5) "there is no remedy for sexual harassment" under the Virginia Workers' Compensation Act.

In an opinion dated May 1, 2024, a majority of the Commission affirmed the Deputy Commissioner's new January 5, 2024 decision that was made on remand.[6] The Commission

---

[6] In a dissenting opinion, the dissenting Commissioner stated:

> I continue to find the evidence in the record fails to establish that the incident was sufficiently shocking, frightening, traumatic, or unexpected to constitute a compensable injury by accident on July

- 8 -

majority, as the finder of fact, found that the patient's act of "making personal, intimate, and inappropriate remarks and then exposing his genitalia to the claimant for his own salacious and exhibitionistic motives" did not constitute "an event that falls within the parameters of the claimant's job description"—as "the intentional, unsolicited, and unnecessary exposure that is the subject of this claim" is not equivalent to "a view of the intimate parts of a patient's anatomy as is sometimes required by the claimant's clinical duties." In so finding, the Commission expressly recognized that,

> in determining whether there is a sudden shock or fright, we do not apply a subjective standard. Consequently, we must dispense with consideration of how we believe we would respond to the same offense. Our subjective assessment must be replaced with an objective analysis and by viewing the evidence before us in light of the established criteria.

Applying an objective standard, the Commission concluded, "So viewed, we find from this evidence that the exposure was not required by the services claimant rendered to this patient. The patient exposed his genitalia suddenly, and after the claimant rebuffed his inappropriate comments." The Commission further concluded, "Conscious of the contempt[i]ble view our Commonwealth takes on such behavior, we find the claimant suffered a compensable sudden shock or fright."[7] Inova now appeals the Commission's decision to this Court.

---

1, 2021. The claimant's hearing testimony simply does not support a finding of a compensable injury by accident in this case.

The dissenting Commissioner "agree[d] with the majority's finding that this type of intentional exposure is not an event that falls within the parameters of the claimant's actual job description." The dissenting Commissioner also "agree[d] with the majority's determination that an objective analysis rather than a subjective analysis is required when assessing whether an event is a sudden shock or fright." However, the dissenting Commissioner nevertheless found that "the event was not completely unexpected in her line of work"—and that "the objective evidence before us is insufficient to determine that this event rose to the level necessary to qualify as a compensable psychological injury by accident."

[7] In addition, the Commission found that Nguyen's injury was not "the consequence of cumulative trauma"—and that the facts did not "present a case of sexual harassment that falls

## II. ANALYSIS

### A. Inova's First Assignment of Error

On appeal, Inova argues, "The Virginia Workers' Compensation Commission erred as a matter of law in finding that the claimant suffered a compensable injury by accident that arose out of and in the course of her employment under the Virginia Workers' Compensation Act." In support of its first assignment of error, Inova provides only two sentences of argument on brief:

> The burden is on the injured worker to prove by a preponderance of the evidence that she suffered a compensable injury by accident that arose out of and in the course of the employment. *Morris v. Morris*, 238 Va. 578 (1989). The record reflects that claimant has not satisfactorily established she suffered an accidental physical injury, nor an accidental psychological injury causally related to a sudden shock or fright as more further outlined below.

Having failed to offer any genuine argument or authority supporting its contention that Nguyen's psychological injury did not arise out of and in the course of her employment with Inova, and having reserved any further discussion regarding Nguyen's psychological injury to its second assignment of error, Inova effectively reduces its first assignment of error to a claim that the evidence did not establish that Nguyen "suffered an accidental physical injury." However, the Supreme Court has made clear that a compensable psychological injury can arise, in a suitable case, even in the absence of any "physical impact." *Burlington Mills v. Hagood*, 177 Va. 204, 209-210 (1941) (recognizing that "there is an accidental or personal injury within the workmen's compensation acts where an employee, in the course of his employment, receives a sudden shock or fright, involving no physical impact, which results in his disability").

---

outside the [Virginia Workers' Compensation] Act's jurisdiction." The dissenting Commissioner agreed, stating, "I am not persuaded by the defendant's arguments on review that the claimant's injury is not compensable because it was cumulative in nature or a finding of compensability in this case is precluded by Virginia Code § 65.2-301(C)." The issues of cumulative trauma and sexual harassment have not been put before this Court in this appeal.

This Court has repeatedly stated, "Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.' Unsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (alteration in original) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). Thus, "'when a party's "failure to strictly adhere to the requirements of Rule 5A:20(e)" is significant,' this Court may treat the question as waived." *Id.* (quoting *Parks v. Parks*, 52 Va. App. 663, 664 (2008)). *See also John Crane, Inc. v. Hardick*, 283 Va. 358, 376 (2012) (considering a party's "failure to comply with the requirements" for opening briefs to be a "waiver of the arguments the party failed to make"). Here, Inova simply failed to offer any legal authority or argument as to why this case is an exception to longstanding and binding Supreme Court precedent holding that a compensable psychological injury does not *require* a showing of any physical injury. Because Inova's failure to abide by the clear requirements of Rule 5A:20(e) is significant, we find Inova's first assignment of error to be waived on appeal.

## B. Inova's Second Assignment of Error

In its second assignment of error, Inova argues, "The Virginia Workers' Compensation Commission erred as a matter of law in finding that the claimant's psychological injuries were the consequence of a compensable shock or fright." Inova contends that Nguyen "suffered a purely psychological injury, which is not compensable in Virginia because it did not stem from a 'sudden shock or fright.'"

### 1. *Standard of Review*

It is well-settled that "[t]he Commission's factual findings, if supported by credible evidence, are binding on appeal." *Loudoun Cnty. v. Richardson*, 70 Va. App. 169, 175 (2019); *Carrington v. Aquatic Co.*, 297 Va. 520, 522 (2019); Code § 65.2-706(A). Likewise, the Commission's "conclusions upon conflicting inferences, legitimately drawn from proven facts,

- 11 -

are equally binding on appeal." *Layne v. Crist Elec. Contractor, Inc.*, 64 Va. App. 342, 345 (2015) (quoting *McKellar v. Northrop Grumman Shipbuilding Inc.*, 63 Va. App. 448, 451 (2014)). "This principle applies 'even [if] there is evidence in the record to support a contrary finding.'" *Jones v. Crothall Laundry*, 69 Va. App. 767, 774 (2019) (alteration in original) (quoting *City of Waynesboro v. Griffin*, 51 Va. App. 308, 317 (2008)). Indeed, the Commission, as the finder of fact, is "free to decide which evidence [is] more credible and should be weighed more heavily." *Thompson v. Brenco, Inc.*, 38 Va. App. 617, 624 (2002). "Consequently, on appeal, 'we do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses.'" *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 87 (2019) (quoting *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411 (1983)).

It is also well-settled that an appellate court must liberally construe the Virginia Workers' Compensation Act to the benefit of workers. *See Dinwiddie Cnty. Sch. Bd. v. Cole*, 258 Va. 430, 436 (1999) (holding that "should doubt remain, [the claimant] is entitled to the benefit of the doubt" because "[t]he provisions of the Workers' Compensation Act 'should be liberally construed to carry out [its] humane and beneficial purposes'" (third alteration in original) (quoting *Baggett Transp. Co. v. Dillon*, 219 Va. 633, 637 (1978))); *see also Hagood*, 177 Va. at 210-11 (recognizing that the Workers' Compensation Act "was enacted for the beneficent purpose of attaining a humanitarian end" and that it "is intended to be remedial and must be liberally construed in favor of the employee").

### 2. *Sudden or Unexpected "Shock or Fright"*

"A claimant may recover workers' compensation benefits for a purely psychological injury, provided the injury is causally related to a sudden shock or fright arising out of *and* in the course of the claimant's employment." *Hess v. Va. State Police*, 68 Va. App. 190, 196 (2017) (quoting *UPS v. Prince*, 63 Va. App. 702, 708 (2014)). *See also Hagood*, 177 Va. at 209-10. This Court has

explained that "to be compensable, a psychological injury as with a physical injury, must arise out of the employment while the triggering event of a sudden shock or fright causing the injury must occur in the course of employment." *Hess*, 68 Va. App. at 197. *See also Jackson v. Ceres Marine Terminals, Inc.*, 64 Va. App. 459, 464 (2015) (stating that "to qualify as a compensable injury, a purely psychological injury, such as PTSD, must be causally related to a physical injury or to an obvious sudden shock or fright arising in the course of employment"); *Fairfax Cnty. Fire & Rescue Dep't v. Mottram*, 263 Va. 365, 375 (2002) (recognizing that "PTSD may be compensable as an injury by accident, depending on the circumstances under which the condition developed"). "Applying this standard, we have noted that 'the types of precipitating events that give rise to purely psychological compensable injuries are consistently described as shocking, frightening, traumatic, catastrophic and unexpected.'" *Hess*, 68 Va. App. at 197 (quoting *Anthony v. Fairfax Cnty. Dep't of Family Servs.*, 36 Va. App. 98, 103-04 (2001)). However, there is no "temporal component or standard for how long a claimant must witness a scene for it to constitute a sufficiently shocking or frightening event." *Prince*, 63 Va. App. at 711, 713 (where this Court affirmed the Commission's decision to award a delivery driver benefits for a psychological injury and held that "there is ample credible evidence in the record to support the [C]ommission's award of benefits based on claimant's PTSD resulting from his encounter with the dead body of a longtime customer on the job").

To recover workers' compensation benefits for a purely psychological injury, the claimant must prove her injury by a preponderance of the evidence. *Hess*, 68 Va. App. at 197. In particular, to prove causation of a sudden or unexpected "shock or fright," the claimant "must prove by a preponderance of the evidence that an obvious sudden shock or fright occurred in the course of [her] employment resulting in" the psychological injury.[8] *Id.* at 197-98. Applying this objective

---

[8] "Although a risk of harm to a claimant may be a factor in cases where the compensability of psychological injuries is evaluated," there is no "specific requirement that the claimant be placed at risk of harm." *Jackson*, 64 Va. App. at 467.

standard, this Court has stated, "The proper inquiry is whether [the claimant] 'encountered a situation that was an expected occurrence in the performance of h[er] duties.'" *Id.* at 198 (quoting *Hercules, Inc. v. Gunther*, 13 Va. App. 357, 363 (1991)). It is well-established that "[w]hether a shock or fright occurred and if so, whether it was sudden or unexpected are clearly factual issues." *Id.* at 199. As noted *supra*, the Commission's determinations on factual issues, so long as they are supported by credible evidence in the record, are conclusive and binding on this Court on appeal. *See Carrington*, 297 Va. at 522 (where the Supreme Court stated, "The Commission's determinations of fact are conclusive and binding on appeal.").

In *Hess*, the Commission denied a State Trooper's claim for benefits for a psychological injury. 68 Va. App. at 193. In that case, the State Trooper sought temporary total disability benefits after responding to a fatal automobile accident in which "the violence of the wreck had mutilated the body [of the driver] beyond recognition." *Id.* In denying the State Trooper's claim for benefits, the Commission, as the finder of fact, concluded that the State Trooper "had not suffered a compensable injury arising out of and in the course of employment" because "the preponderance of the evidence showed the events surrounding the accident were 'not shocking or unexpected to an experienced state trooper and crash scene investigator.'" *Id.* at 194. In so finding, the Commission cited the State Trooper's "duties, training, and position"—as well as testimony from two of the State Trooper's supervisors that "it would not be unexpected for a trooper to work a fatality or come across a mutilated body" and that the particular accident "was not among the worst" that the supervisor had seen. *Id.*

On appeal, this Court affirmed the Commission's denial of benefits, holding that "the decision of the Commission was supported by credible evidence that the fatal accident scene encountered by [the State Trooper] was not sudden or unexpected for a state trooper with his training and experience." *Id.* at 201. This Court noted that the witness "[t]estimony before the

- 14 -

Commission showed that traffic fatalities are an unfortunately frequent and expected occurrence in a trooper's daily duties and that troopers are prepared to encounter these scenes in their training." *Id.* at 199. This Court reiterated that "whether [the State Trooper's] PTSD resulted from a sudden fright or shock and thus occurred in the course of employment was a factual determination ultimately made by the Commission, and given that there is evidence in the record that supports the factual determination the Commission made, it is not further reviewable on appeal." *Id.* at 200.

In *Anthony*, the Commission similarly denied a social worker's claim for benefits for physical and psychological injuries that she suffered after being assaulted during two separate work-related incidents.[9] 36 Va. App. at 100. The social worker, whose "job duties included field contacts with clients and the implementation of court orders," described her clients as "parents who have alcohol and drug problems," "mental health problems," and "problems with the court in terms of abusing their children." *Id.* The social worker even "acknowledged that 'quite often people are very upset when you come to remove their children,' and that it was not unusual for her to encounter anger and profanity in the course of her employment." *Id.* at 102. During the first incident, the social worker "conducted a home visit to discuss a client's non-compliance with a court order" when "[t]he client became angry, pulled claimant from the chair by her arm and threw her out of the house." *Id.* at 100. During the second incident, the social worker "went to a day care center to take emergency custody of two children" when "the mother and grandmother of the children ran up behind her, pushed her out of their way and caused her to fall from the porch." *Id.*

In denying the social worker's claim for benefits, the Commission, as the finder of fact, stated, "Although we agree that the claimant could not have reasonably expected to be assaulted in the course of her employment by the two women, we cannot conclude that the precipitating event

---

[9] Although a psychologist with the social worker's employee assistance program diagnosed the social worker with PTSD, a psychiatrist retained by the social worker's employer found no such evidence of PTSD. *Id.* at 101.

was shocking or catastrophic, or so dramatic or frightening as to shock the conscience." *Id.* at 102. On appeal, this Court affirmed the Commission's denial of benefits, holding that credible evidence in the record supported the Commission's factual determination that "confrontations with angry parents, even limited physical confrontations, were not unusual occurrences in claimant's work environment." *Id.* at 105. This Court further held that credible evidence in the record supported the Commission's factual determination that the two "incident[s] did not rise to the level of the type of sudden shock or fright from which a compensable injury may arise." *Id. But see Southwestern Va. Mental Health Inst. v. Wright*, No. 0489-06-3, slip op. at 5-8, 2006 Va. App. LEXIS 454, at *8-*14 (Va. Ct. App. Oct. 10, 2006) (where this Court distinguished our decision in *Anthony* and affirmed the decision of the Commission to award benefits to a psychiatric aide who developed PTSD after she was sexually assaulted by two men while on duty monitoring patients in the facility's dining room—finding that "credible evidence exists in the record to support the [C]ommission's determination that the sexual assault on claimant constituted a precipitating event that was 'sufficiently dramatic and unexpected so as to shock the conscience,'" even though the psychiatric aide's "work environment placed her where unacceptable conduct was anticipated and recurring").[10]

In the specific case now before this Court on appeal, the Commission was presented with uncontroverted evidence that while performing a venous Doppler ultrasound in July 2021, a patient repeatedly asked Nguyen "a lot of questions that w[ere] inappropriate, at the time, when [she] was trying to perform his test." Nguyen, who was alone in the examining room with the man while trying to do her job that morning, politely but firmly turned down the patient's persistent sexual advances, told the patient that she was already in a relationship, and maintained her professionalism as she continued to scan the patient's legs. However, the man "just wouldn't

---

[10] While not binding, unpublished decisions may be cited as persuasive authority. *See* Rule 5A:1(f); *Smith v. Commonwealth*, 78 Va. App. 371, 383 n.4 (2023).

take no for an answer." As Nguyen finished scanning the patient's affected leg and adjusted her machine to scan the patient's other leg and complete the procedure, the man then "exposed himself to [Nguyen], completely just exposed his private parts to [her]." Given her over 20 years of experience as a hospital emergency room ultrasound technologist, Nguyen was able to "just thr[o]w a towel to cover him up and scan[] that area real quick" before leaving the room—at which point she immediately became "very upset," "really anxious," and "really angry."[11]

The Commission recognized that "there are myriad circumstances in life wherein consensual or inadvertent observation of the intimate parts of another's anatomy will occur"— such as "a view of the intimate parts of a patient's anatomy as is sometimes required by the claimant's clinical duties." However, the Commission distinguished between the ordinary exposure to male or female genitalia in "the clinical realm" for medical purposes from the male patient's "brutish behavior at issue here"—where the man "exposed his genitalia suddenly, and after the claimant rebuffed his inappropriate comments." After considering all of the evidence in the record and noting that it was applying an objective standard, the Commission made a finding of fact that the man's "intentional, unsolicited, and unnecessary exposure" of his penis and testicles to Nguyen after he had just repeatedly "engaged in inappropriate conversation while the claimant performed her duties" was "not an event that falls within the parameters of the claimant's job description." The Commission also found that the "personal, intimate, and inappropriate remarks" persistently made to Nguyen by the man, followed by his "exposing his genitalia to the claimant for his own salacious and exhibitionistic motives," was obviously "not required by the services claimant rendered to this patient."

---

[11] Unlike the evidence before the Commission in *Anthony* (where this Court affirmed the Commission's denial of benefits), in this case the medical evidence of Nguyen's PTSD diagnosis was *not contradicted*. Likewise, in *Prince* (where this Court affirmed the Commission's decision to award benefits for a compensable psychological injury), the medical evidence of the claimant's PTSD diagnosis was also not contradicted. *Prince*, 63 Va. App. at 711 n.5.

Having made these clear findings of fact after considering all of the factual circumstances of this case, the Commission then made a finding that Nguyen "suffered a sudden shock or fright sufficient to satisfy the elements of an injury by accident" and thus awarded her benefits for her psychological injury. Because we certainly cannot say that there was no credible evidence in the record to support the factual findings made by the Commission in this particular case under this specific set of circumstances, the Commission here was not plainly wrong in finding that Nguyen suffered a compensable psychological injury that was causally related to a sudden or unexpected "shock or fright" arising out of and in the course of her employment with Inova. *See Wagner Enters., Inc. v. Brooks*, 12 Va. App. 890, 894 (1991) ("The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the [C]ommission's finding."); *Franklin Mortg. Corp. v. Walker*, 6 Va. App. 108, 110-11 (1988) (en banc) (same). Consequently, we do not disturb the Commission's decision under the facts of this case to award Nguyen benefits for her psychological injury.[12]

### III. CONCLUSION

This is basically a standard of review case. The question of whether Nguyen's psychological injury (which was uncontradicted from all the evidence before the Commission and before us on appeal) resulted from a sudden or unexpected "shock or fright" constituted a

---

[12] Although we do not disturb the decision of the Commission majority to award benefits for a psychological injury in this case, we note that the evidence in this record (or in a similar set of circumstances) could have supported a decision by the Commission to find in favor of the employer and to deny the claimant's claim for benefits—just as the Commission did in *Hess* and in *Anthony*, and just as the dissenting Commissioner would have done in this case. However, we reiterate that it is the singular role of *the Commission* to determine the credibility of the evidence and to then weigh that evidence—and it is not *this Court's* role on appeal to retry the facts that were put before the Commission. That the Commissioners here were split reflects the very nature of making factual determinations and exercising discretion after considering the totality of the evidence then before the Commission. Because credible evidence supports the decision by the Commission (as the finder of fact) in this particular case to award Nguyen benefits for her psychological injury, we must show deference to the Commission when it acts within its factfinding discretion. *See Jeffreys*, 297 Va. at 99.

factual determination for the Commission to make. After hearing witness testimony and weighing all of the evidence in the record, the Commission here properly stated that it was applying an objective standard to that evidence—and the majority of the Commission then found that Nguyen suffered a sudden or unexpected "shock or fright." Given the specific set of facts in this case and given the highly deferential standard of review governing an appeal like this one from the Commission to the Court of Appeals, we simply cannot say that there was no credible evidence in the record to support the Commission's finding of fact that Nguyen experienced a sudden or unexpected "shock or fright" arising out of and in the course of her employment—or that the Commission (as the finder of fact) was plainly wrong in determining that Nguyen suffered a compensable psychological injury entitling her to an award of benefits.

In short, utilizing an objective test (as must be done here) and giving the appropriate deference on appeal to the finder of fact, we cannot say that the Commission erred. Consequently, because this Court will not retry the facts before the Commission (or substitute our own judgment for that of the Commission), we do not disturb the judgment of the Workers' Compensation Commission in this case.

*Affirmed.*